F I L E D
United States Court of Appeals
Tenth Circuit

**April 7, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

　　v.

DANIEL LEE LARSEN,

　　　　Defendant - Appellant.

No. 05-4203
(D. Ct. No. 2:04-CV-875-DAK)
(D. Utah)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **TACHA**, Chief Circuit Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.[**]

Plaintiff-Appellant Daniel Larsen, a federal prisoner proceeding pro se, seeks a

certificate of appealability ("COA") to appeal from the District Court's denial of his

habeas corpus petition brought under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2253(c)(1). We

take jurisdiction under 28 U.S.C. § 1291, deny Mr. Larsen's request for a COA, and

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

dismiss this appeal.

## I.  BACKGROUND

A jury convicted Mr. Larsen of several drug-related offenses, including possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); conspiracy and attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846; establishing a place for the purpose of manufacturing, distributing, and using methamphetamine in violation of 21 U.S.C. § 856(a)(1); possessing pseudoephedrine in violation of 21 U.S.C. § 841(d)(2); and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A).  The District Court sentenced him to 384 months' imprisonment and a panel of this Court affirmed his conviction and sentence on direct appeal.  He petitioned the Supreme Court for a writ of certiorari, which was denied on October 6, 2003.

Subsequently, Mr. Larsen filed a § 2255 petition in the District Court arguing that (1) the trial court erred in failing to sever his trial from that of his co-defendant; (2) the trial court erred in precluding cross-examination of a witness regarding statements Mr. Larsen had made about the co-defendant, in violation of his Sixth Amendment right to confront witnesses against him; (3) his trial counsel was ineffective because he failed to raise the severance and confrontation issues during trial; (4) his appellate counsel was ineffective because he failed to raise the severance and confrontation issues on appeal; (5) his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v.*

*Booker*, 543 U.S. 220 (2005); and (6) even if any of these individual errors do not warrant reversal, their cumulative nature entitles him to relief. The District Court denied Mr. Larsen's petition on May 16, 2005 and also denied him a COA. He filed a notice of appeal on July 22, 2005. [1]

## II. DISCUSSION

Unless a petitioner first obtains a COA, no appeal may be taken from a final order disposing of a § 2255 petition. 28 U.S.C. § 2253(c)(1)(B). This Court may issue a COA only if the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). Our role is to conduct an "overview of the claims in

---

[1]Federal Rule of Appellate Procedure 4(a)(1)(B) requires that a notice of appeal in a civil case where the United States is a party be filed within sixty days after the district court's entry of the judgment or order appealed from. Mr. Larsen's notice of appeal therefore appears untimely, as he filed it more than sixty days after the District Court memorialized its decision. A judgment or order is not entered within the meaning of Fed. R. App. P. 4(a), however, unless it complies with Rules 58 and 79(a) of the Federal Rules of Civil Procedure. Fed. R. App. P. 4(a)(7). The District Court in this case failed to comply with Rule 58, which requires that every judgment be set forth on a separate document. In such a case, judgment is deemed entered when 150 days have run from the time of the District Court's May 16, 2005 order. Fed. R. Civ. P. 58(b)(2)(B); Fed. R. App. P. 4(a)(7). Thus, the time to appeal did not begin to run until October 13, 2005. Mr. Larsen's notice of appeal, which was filed on July 22, 2005, is therefore timely. *See Patel v. Fleming*, 415 F.3d 1105, 1109 n.3 (10th Cir. 2005).

the habeas petition and a general assessment of their merits." *Id.*

A.      Ineffective Assistance of Counsel

Mr. Larsen asserts several of the claims he raised in his original § 2255 petition to the District Court and also asserts some new claims not previously raised.[2]  We first note that two of his arguments—that the trial court erred in failing to sever his trial and that the trial court erred in refusing to permit cross-examination of a witness—were not raised on direct appeal.  Therefore, Mr. Larsen "is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).  To cure these procedural defects, Mr. Larsen raises these issues in the context of ineffective assistance of counsel claims, which, if established, can revive otherwise procedurally defaulted claims.  *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) ("A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default.").

Ineffective assistance claims are governed by the familiar two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), under which the plaintiff must show that his attorney's performance "'fell below an objective standard of reasonableness' and that

---

[2]We note that Mr. Larsen appears to have abandoned his claim of cumulative error. Nonetheless, we have reviewed this claim and conclude it does not provide a basis for relief.

the unreasonably deficient performance resulted in prejudice." *Lucero v. Kerby*, 133 F.3d 1299, 1323 (10th Cir. 1998) (quoting *Strickland*, 466 U.S. at 688). A petitioner can establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "If we determine petitioner has failed to prove prejudice, we need not determine whether counsel's performance was constitutionally deficient." *Lucero*, 133 F.3d at 1323.

> 1. *Ineffective Assistance of Trial Counsel*

Mr. Larsen first contends that he received ineffective assistance of trial counsel because his counsel (1) failed to investigate the case adequately; (2) failed to cross-examine certain witnesses for the Government; and (3) failed to present witnesses on Mr. Larsen's behalf. The District Court rejected these claims because Mr. Larsen made no showing of, nor was there support in the record for, a finding of prejudice. We agree and conclude that this result is not debatable among jurists of reason. With respect to his claim that his counsel failed to investigate his case adequately and present witnesses on his behalf, for example, Mr. Larsen does not indicate that any witnesses existed who could have been favorable to his defense. As to his claim that his counsel failed to cross-examine certain government witnesses, Mr. Larsen does not contend that these individuals were even witnesses against him (Mr. Larsen was tried along with a co-defendant, Pauline Blake) nor does he suggest that if they had been cross-examined they

would have had anything of value to offer in Mr. Larsen's defense.

Mr. Larsen next argues that his counsel's decision to waive opening statement constituted unreasonably deficient performance that resulted in prejudice because he and his co-defendant had antagonistic defenses. An opening statement is optional, however, and there is a strong presumption that trial counsel in deciding to waive it was using sound trial strategy. *United States v. Miller*, 907 F.2d 994, 998 (10th Cir. 1990). Indeed, we have consistently held that without more, waiver of an opening statement does not constitute ineffective assistance of counsel, even when no reasonable explanation exists for counsel's decision to waive opening statement. *See Clayton v. Gibson*, 199 F.3d 1162, 1178 (10th Cir. 1999). Here, the District Court concluded that there was no basis to question this strategic decision, and Mr. Larsen has failed to show that this conclusion is debatable among jurists of reason.

Mr. Larsen goes on to argue that his trial counsel was ineffective because he failed to press for the severance of his trial from his co-defendant's once it became clear that they had antagonistic defenses. Specifically, Mr. Larsen's defense at trial was that he was merely a drug user and played no role in Ms. Blake's conspiracy to manufacture and distribute methamphetamine. Ms. Blake argued the opposite scenario was true—that is, that Mr. Larsen was the mastermind behind the conspiracy and that she was merely a drug user in the wrong place at the wrong time. Mr. Larsen's counsel moved for severance prior to trial, but the trial court denied the motion. Mr. Larsen argues that his counsel was

ineffective for failing to reraise the issue once it became clear that their defenses were mutually antagonistic and irreconcilable.

Rule 14 of the Federal Rules of Criminal Procedure permits a court to order severance of consolidated trials if consolidation appears to prejudice a defendant. Fed. R. Crim. P. 14. Severance is not mandated, however, whenever codefendants have conflicting defenses. *Zafiro v. United States*, 506 U.S. 534, 538 (1993). "Mutually antagonistic defenses are not prejudicial per se. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538–39. A court need only sever trials when there "is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

Mr. Larsen argues that he was prejudiced by the joint trial in several ways. He first argues that the joint trial violated his Sixth Amendment right to confrontation because he was prevented from eliciting his own exculpatory out-of-court statements from Detective Gary Powell of the Provo City Police Department on cross-examination. The facts related to this claim are as follows: Shortly after Mr. Larsen was arrested, he made several inculpatory statements to Detective Powell. He also made several exculpatory statements that tended to inculpate Ms. Blake. On direct examination, Detective Powell testified as to Mr. Larsen's inculpatory statements but the trial court

prohibited Mr. Larsen from eliciting on cross-examination the exculpatory statements.

The Supreme Court has said that "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* Here, however, Mr. Larsen has failed to show that his exculpatory out-of-court statements would have been admissible if he were tried alone.[3] Mr. Larsen does not point to any exception to the hearsay rule that would permit him to introduce into evidence his own out-of-court exculpatory statements; nor can we identify one.

For example, Fed. R. Evid. 804(b)(3) does not apply because that rule "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. . . . [T]his is especially true when the statement implicates someone else." *Williamson*, 512 U.S. at 600–601. Rule 801(d)(1), which excludes from the definition of hearsay certain prior consistent statements when the declarant testifies at trial, does not apply because Mr. Larsen (the declarant) did not testify at trial. Rule 801(d)(2), which excludes from the definition of hearsay admissions by a party-opponent, does not apply because that rule does not permit self-serving, exculpatory statements made by a party and offered by that same party. Rule 106, which

---

[3]We note that Mr. Larsen's inculpatory statements were properly admitted against him. *See* Fed. R. Evid. 804(b)(3) (permitting as an exception to the hearsay rule a declarant's own out-of-court statements "which . . . at the time of [their] making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement[s] unless believing [them] to be true"); *Williamson v. United States*, 512 U.S. 594, 600–601 (1994).

states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it," does not apply because no written or recorded statement was admitted into evidence. Although these are just some examples, upon a review of the remaining exclusions and exceptions, we conclude that none apply in this case.

Though we acknowledge that the rules of evidence "may not be applied mechanistically to defeat the ends of justice," *see Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), in appropriate circumstances, the defendant's right to present relevant testimony may "'bow to accommodate other legitimate interests in the criminal trial process.'" *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir. 1997) (quoting *Michigan v. Lucas*, 500 U.S. 145, 149 (1991)). In this case, we decline to permit Mr. Larsen to use the Confrontation Clause as a means to "effectuate an end-run around the adversarial process" by admitting his otherwise inadmissible hearsay testimony without subjecting himself to cross-examination. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005); *United States v. Ortega*, 203 F.3d 675, 683 (9th Cir. 2000).

Next, Mr. Larsen claims that several witnesses against Ms. Blake would not have testified in Mr. Larsen's trial if he were tried alone. Even assuming this is true, Mr. Larsen has failed to establish prejudice. He does not suggest, for example, that these witnesses offered any testimony against him at all, nor does he suggest that these

witnesses offered testimony probative of his guilt that would have been inadmissible were he tried alone. *See Zafiro*, 506 U.S. at 539. The fact that a witness testified against one co-defendant but not another does not establish any violation of a specific trial right.

Finally, Mr. Larsen suggests that he was prejudiced by the "[i]nability to present a complete defense, and his best defense, concomitant with witnesses inculpating Blake; and [by the] [i]nability to subpoena Pauline Blake as a witness." Although he states that the prejudice to him in these instances is "clear" (and he therefore offers no further comment on why he was prejudiced by these alleged errors), we disagree. Moreover, Mr. Larsen did not raise these alleged errors in his original § 2255 petition to the District Court. For these reasons, we decline to address them further. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

In sum, Mr. Larsen has failed to show that jurists of reason would debate whether his trial counsel was constitutionally ineffective.

*2.      Ineffective Assistance of Appellate Counsel*

Mr. Larsen argues that his appellate counsel's failure to raise the severance issue and the confrontation issue on direct appeal constitutes ineffective assistance of counsel. In determining whether appellate counsel's failure to raise an issue on direct appeal constitutes ineffective assistance, we examine the merits of the omitted issue. *See United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993) (addressing the merits of defendant's Fourth Amendment claim which was omitted on direct appeal). If the omitted issue is

without merit, counsel's failure to raise it "does not constitute constitutionally ineffective assistance of counsel." *Id.* at 1083 n.5. We concluded above that the severance issue and the confrontation issue are without merit. Accordingly, Mr. Larsen's appellate counsel was not constitutionally ineffective for failing to raise those issues on direct appeal.

Mr. Larsen also argues that he received ineffective assistance of appellate counsel because he failed to file a Rule 28(j) letter with the appellate court that would have affected the length of his sentence.[4] During the pendency of Mr. Larsen's direct appeal, the Sentencing Commission amended U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1(a)(3) to read, "if the defendant receives an adjustment under § 3B1.2 (Mitigating Role), the base offense level under this subsection shall not be more than 30." Mr. Larsen argues that the trial court sentenced him under § 2D1.1(a)(3) and that the trial court found that he was a minor participant under § 3B1.2, but that it nonetheless set Mr. Larsen's base offense level at 38. He argues that if his appellate counsel had filed a Rule 28(j) letter in accordance with his continuing duty to advocate on Mr. Larsen's behalf throughout his direct appeal, he would have received a sentence 156–237 months shorter than the sentence he in fact received. Again, Mr. Larsen did not raise this issue in his

---

[4]Fed. R. App. P. 28(j) states in relevant part:

(j) Citation of Supplemental Authorities. If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations.

original § 2255 petition to the District Court and we therefore need not address it here. We note however, that Mr. Larsen was sentenced on January 7, 2002. The amendment at issue, Amendment 640, took effect on November 1, 2002, *see* U.S.S.G. App. C, Amendment 640, more than nine months after he was sentenced. "Absent an ex post facto problem, the district court is *required* to apply the Guidelines provisions in effect at the time of sentencing." *United States v. Cruz-Alcala*, 338 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted). In *Cruz-Alcala*, this court rejected an identical argument on direct appeal and held that the district court did not err when it sentenced the defendant under the 2001 Guidelines manual and did not apply Amendment 640. *Id.* Because there is no merit to the underlying substantive claim, Mr. Larsen's claim of ineffective assistance of appellate counsel also fails.

B.     *Blakely* and *Booker* Claims

Mr. Larsen argues that his sentence is unconstitutional under the Supreme Court's recent decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005) because the District Court applied the Sentencing Guidelines mandatorily to increase his sentence based on facts neither found by a jury beyond a reasonable doubt nor admitted by Mr. Larsen. Generally, "a new rule of criminal procedure 'will not be applicable to those cases which have become final before the new rules are announced.'" *United States v. Bellamy*, 411 F.3d 1182, 1186 (10th Cir. 2005) (quoting *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion)). We have

previously held that both *Blakely* and *Booker* provide new rules of criminal procedure and are not subject to retroactive application on collateral review to convictions that were "final" at the time the cases were decided by the Supreme Court. *Id.* at 1186–87. *Blakely* was decided on June 24, 2004 and *Booker* was decided on January 12, 2005. Mr. Larsen's conviction became final for *Teague* purposes, however, when the Supreme Court denied his timely certiorari petition on October 6, 2003, *see United States v. Price*, 400 F.3d 844, 846 (10th Cir. 2005), almost nine months before the Court's decision in *Blakely*, and approximately eighteen months before the Court's decision in *Booker*. Mr. Larsen is therefore unable to benefit from the holdings of either case.

## III. CONCLUSION

We conclude that reasonable jurists could not debate the resolution of the constitutional claims presented. Accordingly, we DENY Mr. Larsen's request for a COA and dismiss his appeal.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge